IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS M. RUIZ-FELICIANO,

   Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

CIVIL NO. 11-1293 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff José M. Ruiz-Feliciano (hereafter plaintiff "Ruiz-Feliciano") seeks judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying his application for a period of disability and ensuing disability benefits for a limited period of eleven (11) months from November 3, 2003 through December 4, 2004. U.S.C.A. §402 . (Docket No. 1).[1]

Plaintiff Ruiz-Feliciano filed his current application on January 30, 2006. Although plaintiff Ruiz-Feliciano had previously claimed disability on November 21, 2001, with onset date of May 20, 2000, once same was administratively denied, no appeal was filed, for which the petition to reopen said initial period was denied.

Thus, the instant complaint is solely as to eleven-month pending period of disability, for which the administrative agency ruled to grant Ruiz-Feliciano benefits solely at the conclusion of said period upon considering Ruiz Feliciano had attained his 50th birthday by

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

December 4, 2004, but remained insured for disability purposes up until December 31, 2004. As such, then being an individual considered to closely approaching advanced age, Ruiz-Feliciano was to be found disabled under the same conditions for which the closed period of claimed disability – that is, November 3, 2003 through December 4, 2004– had been filed and denied and is subject to this judicial review.

On November 9, 2011, the Commissioner filed the Social Security transcript and its answer to the complaint. (Docket Nos. 10 and 11). On February 29, 2012, plaintiff filed his memorandum of law and the Commissioner filed his memorandum on March 27, 2012. (Docket Nos. 23, 24). Upon examination of the pleadings, including a review of the administrative record, this Magistrate Judge resolves as follows.

**ADMINISTRATIVE AND PROCEDURAL HISTORY**

Plaintiff Ruiz-Feliciano filed his application for disability benefits for the period of November 3, 2003 through December 4, 2004, because of disabling conditions, to wit, diabetes mellitus, arthritis, lumbar impairment, chronic pain and a mental condition. The Administrative Law Judge ("ALJ") concluded the combination of impairments did not meet the requirement of the Listing of Impairments. Still, the ALJ determined plaintiff was unable to perform his previous past relevant work as a factory worker in the tuna industry and maintenance work at a cemetery, both considered unskilled. (Trans., p. 24). The ALJ, conducted a video hearing with plaintiff Ruiz-Feliciano and his legal representative, and found that, prior to December 4, 2004, before plaintiff had attained his 50th birthday, he was not under disability. However, once plaintiff's age category changed on December 4, 2004, the ALJ considered that, under the same premises, an individual who was now

closely approaching advanced age, was indeed disabled and thus benefits were thereafter granted. Plaintiff's complaint for judicial review herein deals solely with the period for benefits were denied between November 4, 2003 through December 3, 2004.

At step one, the ALJ determined whether plaintiff Ruiz-Feliciano had engaged in substantial gainful activity since November 13, 2003, the applicable alleged onset date of disability. The ALJ concluded plaintiff did not engage in substantial activity during said time frame. (*Id.*, p. 21). At step two, the ALJ must determine whether plaintiff has met a medically determinable impairment that is severe or a combination of impairments that is severe. The ALJ concluded that Ruiz-Feliciano's impairments were severe and at step three concluded the impairments or combination thereof did not meet the medical criteria of the Listing of Impairments for which it followed the sequential evaluation process at step four. The ALJ must therein determine plaintiff's residual functional capacity and if it would allow performance of his past relevant work. Upon determining Ruiz-Feliciano could not perform the previous jobs as worker in the tuna factory nor at the cemetery doing maintenance work outdoors, the ALJ examined the existence of other jobs available within the national economy. At this fifth step, the ALJ is the one having the burden to find the existence of such jobs within what he considered was light level of exertion. The ALJ concluded, without any particulars, that plaintiff was able to perform the full range of light type of work using the Medical Vocational Guidelines (the "GRID"), and found Ruiz-Feliciano not disabled.

The ALJ's opinion denying plaintiff Ruiz-Feliciano's application for disability benefits stated that plaintiff's allegations of inability to work because of herniated disc,

major depression, diabetes mellitus, a pinched nerve, muscle spasms and schizophrenia were not entirely credible based on the medical record. The ALJ determined the medical evidence showed Ruiz-Feliciano retained the residual functional capacity to perform light work activity and that he possessed moderate personal, social and occupational limitations as a result of his mental impairments at the time. Indeed, Ruiz-Feliciano had suffered a work related accident and tests of the lumbar spine showed findings of mild degenerative disc disease, minimal bulging annulus at L4-L5 discs, as well as a small disc protrusion at L5-S1 levels. By March of 2002, X-rays of the lumbar spine showed findings of straightening, considered secondary to muscle spasm, mild lower lumbar spondylosis, as well as mild degenerative disc disease at L5-S1. (*Id.*, p. 22). The ALJ concluded there was no evidence of any motor, sensory or reflex abnormalities and no indication of aggressive medical treatment, emergency room treatment, surgery or hospitalization. EMG studies conducted in May 2008, long after the insured period but considered by the ALJ in his opinion, established mild bilateral carpal tunnel syndrome. (*Id.*, p. 23).

Insofar as the mental functioning, the ALJ relied on a state agency review by Dr. Orlando Reboredo in March of 2006 in which it was assessed the patient had moderate personal, social and occupational limitations as a result of his mental impairment. The record of the treating psychiatrist, Dr. José Zamora, who had seen the patient since October 2001 and up to October of 2005, further indicated the patient had a moderately severe mental condition. The diagnosis was of generalized anxiety disorder and a major recurrent depression with psychotic features. Dr. Zamora also referred to a history of having problems with memory and rated the patient's global assessment of functioning at "35 to 41" and "41

José M. Ruiz Feliciano v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1293 (CVR)
Page No. 5

to 45". The ALJ, however, noted this assessment did not specifically state if such was plaintiff's limitation by the date concerned, that is, December of 2004, or if it had so developed by December 2005, the time of the last treatment. The ALJ also considered reports from Dr. Yolanda Varela Rosa and from Cesco-Aguadilla, which notes failed to show severe mental symptoms. (*Id.*, p. 23).

The ALJ refers to notes from Centro de Salud Conductual, Ponce Medical School, dated April and July of 2005, wherein plaintiff showed no significant abnormalities on mental status examinations. Reference is made to Ruiz-Feliciano being of normal appearance, cooperative, affect as congruent, without auditory or visual hallucinations, no suicidal ideation and adequate impulse and judgment.[2]

In reference to plaintiff's treating psychiatrist at the time of the administrative process, the ALJ refers that by March 2009 Ruiz-Feliciano suffered from chronic pain syndrome, osteoarthritis, diabetes mellitus and a depressive disorder. The mental condition was considered chronic, severe and non-remitting, and the patient was described as suffering from depression and psychosis, presenting audio and visual hallucinations, diminished concentration and attention spam, depressed mood, insomnia, anxiety and irritability, being totally isolated. (*Id.*, pp. 23-24).

The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the intensity, persistence and

---

[2] The ALJ's opinion, however, uses the gender "she" as to plaintiff Ruiz-Feliciano, who is a male individual, who constantly appears accompanied by his wife. (*Id.*, pp. 23 and 114).

limiting effects of these symptoms were not credible prior to December 4, 2004, based on the assessment of the medical record. (*Id.*, p. 24).

    The ALJ determined plaintiff Ruiz-Feliciano was considered unable to perform his past relevant work as a tuna factory laborer and a cemetery maintenance worker, activities which exceeded the light level of exertion. During the period which covered the ALJ's decision, plaintiff Ruiz-Feliciano was initially 48 years old. Then up to December 3, 2004, he was still less than 50 years old by a few days. The ALJ considered plaintiff as a younger individual, when he was still a few days from reaching his 50th birthday, being not until December 4, 2004, when his age category would change to an individual closely approaching advanced age. It was also indicated that Ruiz-Feliciano was illiterate and could not communicate in English, he also had no transferable job skills, considered not relevant for plaintiff's work experience was unskilled. Considering the age category, education and work experience, as well as the residual functional capacity for light type of work, at least up to December 3, 2004, plaintiff as a younger individual was found not disabled. However, upon his 50th birthday a day after, and since plaintiff was insured for disability purposes up to December 31, 2004, the ALJ found that benefits would be awarded under the same premises, for at this time an individual who was considered as closely approaching advanced age he was considered disabled. (*Id.*).

    Plaintiff Ruiz-Feliciano's legal representation, Atty. Salvador Medina de la Cruz, objected to the ALJ's determination as to finding alternate work within the full light level of exertion by the use of the GRIDS for an individual, such as plaintiff, who also had non-exertional limitations imposed by his mental condition and/or by pain due to his back

condition. In addition to the medical record already mentioned by the ALJ, there is evidence Ruiz-Feliciano began treatment since September 19, 2000 at the Centro de Salud Conductual, Ponce Medical School, because of auditory hallucinations, poor judgment, poor insight and had a poor prognosis upon a diagnosis of schizophrenia undifferentiated type. (*Id.*, pp. 589-590).[3] More so, Dr. Ronald Malavé, who had treated plaintiff since September 19, 2000, prepared a report dated March 13, 2009, indicating his mental condition had been chronic, severe and non-remitting, which treatment is consistent with the pharmacotherapy and supportive treatment. (*Id.*, pp. 644-645). Dr. Malavé made a residual functional capacity assessment that showed markedly limited capacity to carry out simple instructions and make simple work related decisions. The capacity to complete a normal work-day and work-week without interruption was assessed as extremely marked, and same as to ability to perform at a consistent pace without unreasonable number of length of rest periods. (*Id.*, pp. 648-649).

Plaintiff Ruiz-Feliciano further argued the ALJ's use of the GRID, which was designed to enable the Secretary to satisfy the burden at the fifth step in a streamline fashion without resorting to live testimony of vocational experts, is predicated in the individual having impairments which manifest themselves by limitations in meeting the strength requirements of jobs. 20 C.F.R. Part 404, Subpart P, App. Section 2 2000.00(e) (1988). In regards with plaintiff Ruiz-Feliciano, there are additional non-exertional limitations that hinder his capacity to perform all or substantially the requirements for light

---

[3] The diagnosis was assessed as 295.9 (Schizophrenia Undifferentiated Type). *Diagnostic Codes for Mental Disorders, Diagnostic and Statistical Manual of Mental Disorders*; Fourth edition (DSM-IV, Appendix 16).

work. Thus, the ALJ's failure in relying solely on the GRID, without securing an expert opinion to assess the eroding impact on plaintiff's occupational base, caused the administrative decision to err. (Docket No. 23, pp. 10-11 and 13).

The Commissioner's memorandum of law acknowledges the ALJ reached the conclusion at step five through a strict application of the GRID. (Docket No. 24, p. 5). However, defendant argues the summary of the relevant medical evidence is considered to support the ALJ's decision that plaintiff was not mentally disabled prior to December 4, 2004. (*Id.*, p. 9). Thus, defendant's memorandum submits the ALJ was not required to obtain the testimony of a vocational expert at step five (5) since in some cases the residual functional capacity and the vocational profile would permit the Commissioner to find, without more than the GRID, that plaintiff is capable of performing jobs existing in substantial numbers. (*Id.*, p. 10).

**LEGAL ANALYSIS**

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d at 31; Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

The progress notes and the medical evaluations show plaintiff Ruiz-Feliciano initially received treatment by the State Insurance Fund in Aguadilla, Puerto Rico for a work related accident and back injury. He continued treatment with Dr. Yolanda Varela Rosa, General Medicine and Acupuncture practitioner, and with Dr. Samuel Quiñones for his back

---

[4] Falu v. Secretary of Health & Human Servs., 703 F.2d 24 (1st Cir. 1983).

condition, back pain, and diabetes mellitus. Ruiz-Feliciano also received mental treatment and pharmacotherapy from Dr. Humberto Ramírez for complaints of depression, insomnia, and difficulties in concentration. The diagnosis was of major depressive disorder, low back pain syndrome with a poor prognosis. (Trans., pp. 186-188).

A neurological examination by Dr. Samuel Méndez in 2002 referred to complaints of back pain, that were exacerbated by light house duties, cold weather, sudden movements, walking for more than fifteen (15) minutes or remaining in the same position. Plaintiff Ruiz-Feliciano was then under prescribed medication for his diabetes and for a mental condition, including Xanax, Serzone and Relafen. (*Id.*, p. 200). The motor system showed no atrophy, no spasm, but was tender at the lumbar paraspinal muscles. Gait was assisted by a cane but determined not dependent. (*Id.*, p. 201). The diagnosis was of chronic lumbalgia and lumbo sacral syndrome. (*Id.*, p. 202). X-rays of March 18, 2002 found straightening of the lumbar spine, most likely secondary to muscle spasm; mild lower lumbar spondylosis and mild degenerative disc disease at L5-S1 level. (*Id.*, p. 206). These events as to a back condition were confirmed in 1999 by MRI of the lumbar spine. (*Id.*, p. 296).

There is a psychiatric evaluation dated April 9, 2002, which refers to the patient receiving treatment from Dr. Zamora every one (1) to three (3) months and being partially successful as to the diabetes mellitus and vertebral disk herniation. At another instance, the patient was unwilling to talk to Dr. Muñiz Ramírez and was described as alert and oriented, but looking sleepy and staying in the couch with his eyes closed all the time, not interrupting the conversation or giving any information provided by the wife. He looked

clean, used a cane without specific limping, had no eye contact or social interaction. Thoughts, memory and concentration could not be examined. The diagnosis was of adjustment disorder since the patient could not be evaluated due to lack of cooperation. (*Id.*, pp. 210-211). In 2002, a consultative psychiatric questionnaire found moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace but since the individual was not working, no repeated episodes of decompensation were found. (*Id.*, p. 365).

The progress notes of Centro de Salud Conductual dated September of 2001 refer to a diagnosis of schizophrenia undifferentiated. The patient seemed at the time oriented and aware, with occasional auditive hallucinations, without homicidal or suicidal ideas. The prognosis was poor although the patient was following treatment and ingesting medication. (*Id.*, pp. 373 ). There was frequent insomnia and anxiety. (*Id.*, p. 375). Treatment continued through 2003-2004, receiving follow-up treatments at Centro de Salud and medications were refilled. (*Id.*, pp. 585-587).

Dr. José J. Zamora refers to attending patient Ruiz-Feliciano from the year 2000, upon referral by the State Insurance Fund, with a first visit in October 16, 2001 and monthly visits up to the year 2005. Onset date of the mental condition appears clearly in the report as 2000. (*Id.*, p. 598). The report summary states the patient's mental condition maintained a chronic course, in addition to having chronic pain syndrome, arthritis, lumbar injury, and diabetes mellitus type 2. The patient was irritable and isolated, barely socializing and his relationships deteriorated, remaining isolated. Succinctly, the report

form prepared for the Disability Determination Program indicated the mental status section could be based on the latest interview, which is referred as October 31, 2005. However, Dr. Zamora's report also stated memory problems present since about 2000. (*Id.*, p. 600). The patient was described with anxious mood, flat affect, diminished attention, diminished concentration and poor judgment. (*Id., p. 599*). The diagnosis was of generalized anxiety disorder, major depression recurrent, with psychotic features. The prognosis was poor. (*Id.*, p. 602).

Under the case law, it is appropriate for the Secretary to rely on the GRID to bar disability status where a claimant is within the exertional limitations and the admitted mental impairments have only a slight effect on the availability of work. Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991). "If a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid ... can be relied on exclusively...." Ortiz v. Sec. of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

When dealing with mental impairments, the inquiry entails two separate determinations: (1) whether a claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved. As to the former, the Secretary has outlined the mental capabilities required for unskilled work, to wit; the basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss

José M. Ruiz Feliciano v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1293 (CVR)
Page No. 13

of ability to meet any of these basic work-related activities would severely limit the potential occupational base. SSR 85-15, at 94. *See* Ortiz v. Sec. Health & Human Servs., 890 F.2d 520. Where a claimant has one or more non-strength limitations, "the Guidelines do not accurately reflect what jobs would or would not be available." Gagnon v. Secretary of Health and Human Services, 666 F.2d 662, 665 n. 6 (1st Cir. 1981).[5]

There is no controversy that plaintiff Ruiz-Feliciano had non-exertional conditions insofar as back pain due to lumbar and a mental condition. In addition, the admitted mental impairments, as the medical record establishes, could not be considered to have only a slight effect on the availability of work, for there is medical evidence on record that there were moderate restrictions, imposed by non-exertional limitations that could erode, even if at least marginally, the occupational base. *See* Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991). The ALJ's sole reliance on the GRID, without the use of a vocational expert to reach such a conclusion, would not allow, in this particular situation, the necessary substantial evidence to find plaintiff not disabled during the period of November 3, 2003 through December 4, 2004. Furthermore, there is substantial medical evidence in support

---

[5] *See* Lugo v. Secretary of Health and Human Services, 794 F.2d 14 (1st Cir. 1986). In Gagnon, 666 F.2d at 665-66, the Court of Appeals for the First Circuit approved the procedure set out by section 200.00(e)(2) of Appendix 2 to Subpart P, 20 C.F.R. Part 404, to be followed when both exertional and nonexertional factors are present. As the regulations state,"(2) ... [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of *how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."* (Emphasis added).

José M. Ruiz Feliciano v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1293 (CVR)
Page No. 14

of a severe mental condition, constant medical treatment and compliance with medication, still with a poor prognosis from the treating sources.

This Magistrate Judge is cognizant that it is within the Secretary's domain to give greater weight to the testimony and reports of medical experts who are commissioned by the Commissioner. Lizotte v. Secretary Health and Human Servs., 654 F.2d at 130.[6] Opinions of physicians in social security disability proceedings are not entitled to greater weight merely because they are treating physicians, as opposed to consulting physician. Rodríguez-Pagán v. Sec. Health & Human Servs., 819 F.2d 1 (1st Cir. 1987).

Still, the record that could support a finding contrary to the treating sources, Dr. Reboredo, clearly indicated that upon the patient's lack of cooperation –regardless if voluntary or precisely because of his mental condition– the assessment was incomplete. On the other hand, treating sources' records were clear, showed having provided continuous care and treatment for a mental condition, which the patient had complied but still the prognosis was poor.[7] As such, treating sources' credibility were not at issue. Disregarding these treating sources, which are not merely based on subjective complaints, to

---

[6] See Keating v. Sec. Health & Human Servs., 848 F.2d 271 (1st Cir. 1988).

[7] The S.S. regulations allowed more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record, we will give it controlling weight. When we do not give ... controlling weight, we will apply [other factors] in determining [its] weight ... We will always give good reasons in our ... decision for the weight we give your treating source's opinion. See 20 C.F.R. § 404.1527(d)(2).

José M. Ruiz Feliciano v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1293 (CVR)
Page No. 15

accommodate an incomplete medical assessment by a consultative source would not fulfill the substantial evidence criteria as to plaintiff Ruiz-Feliciano's mental condition.[8]

In view of the above discussed, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole and as such the same is vacated.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is not supported by substantial evidence and is vacated.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 29th day of August of 2012.

        S/CAMILLE L. VELEZ-RIVE
        CAMILLE L. VELEZ RIVE
        UNITED STATES MAGISTRATE JUDGE

---

[8] The opinions of these treating psychiatrist are not entitled to more weight simply because of their status as a treating source, Rodríguez-Pagán, 819 F.2d at 3, but rather because the opinions are consistent both with the record as a whole and with many of the factors listed in 20 C.F.R. § 404.1527(d).